UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DIEGO ARMANDO M. G.,

Petitioner,

v.

WARDEN, CENTRAL VALLEY ANNEX DETENTION FACILITY,

Respondent.

No. 1:26-cv-04892-TLN-AC

A # 232-418-079

**RELEASE ORDER**

This matter is before the Court on Petitioner Diego Armando M. G.[1]'s ("Petitioner") Petition for Writ of Habeas Corpus and Motion for Temporary Restraining Order ("TRO"). (ECF Nos. 1, 2.) Respondent filed an opposition. (ECF No. 6.) For the reasons set forth below, Petitioner's habeas petition is GRANTED and the Motion for TRO is DENIED as moot.

///

///

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is an asylum-seeker who entered the United States without inspection on an unknown date.  (ECF No. 1 at 25; ECF No. 6 at 6.)  Although the precise amount of time Petitioner has resided in this country is unclear, Petitioner and Respondent submit documents indicating he has lived in the United States for at least three years.  (*See* ECF No. 1 at 19–24; ECF No. 6 at 12–24.)  During that time, he lived in Texas, was granted work authorization, and obtained employment.  (ECF No. 1 at 20, 24, 33.)  Petitioner attaches letters of reference to his petition attesting to his good character.  (*Id.* at 19–24.)

On April 25, 2026, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") in Dallas, Texas after local authorities arrested him for driving while intoxicated.[2]  (ECF No. 6 at 9.)  He was subsequently placed in removal proceedings.  (*Id.* at 6.)  He filed the instant Petition for Writ of Habeas Corpus and Motion for TRO on June 25, 2026, challenging the lawfulness of his detention and seeking immediate release.  (ECF Nos. 1, 2.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v.*

---

[2]    Respondent also submits Petitioner's RAP sheet which contains a prior charge for theft, which was dismissed, and an additional prior charge for driving while intoxicated, for which the disposition is listed as "held."  (ECF No. 6 at 9.)  Respondent's records indicate that ICE exercised prosecutorial discretion not to initiate removal proceedings after one of these arrests. (*Id.*)  Respondent does not argue that Petitioner's criminal history subjects him to mandatory detention.

*Davis*, 533 U.S. 678, 687 (2001).

**III.    ANALYSIS**

Petitioner challenges his continued detention without notice or a hearing as violating the Fifth Amendment's Due Process Clause.  (*See* ECF No. 1.)  In opposition, Respondent contends Petitioner is an "applicant for admission" who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").  (*See* ECF No. 6.)

A.    Immigration and Nationality Act

Section 1226(a) of the INA "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  The statute affords the government broad discretion whether to release or detain the individual. *Id.*  It also provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202.  Conversely, § 1225(b)(2) mandates detention during removal proceedings for "applicants for admission" who are "seeking admission" and does not provide for a bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).  Until the U.S. Department of Homeland Security changed its policy in July 2025, the government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.

The Court is not persuaded by Respondent's assertion that Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2).  Courts throughout the Ninth Circuit, including this one, have repeatedly rejected Respondent's argument on the applicability of § 1225(b)(2) to noncitizens like Petitioner who are residing in the United States pending resolution of their immigration proceedings. *See e.g.*, *Hortua v. Chestnut*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 at *3 (E.D. Cal. Dec. 9, 2025); *Estrada-Samayoa v. Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases). "These courts examined the text, structure, agency application, and legislative history of

1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at \*8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at \*4 (E.D. Cal. Sept. 23, 2025) (collecting cases).

Respondent puts forth no new arguments or facts justifying reconsideration in this case. Thus, for the aforementioned reasons and consistent with this Court's numerous prior rulings, the Court rejects Respondent's position and finds Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2).  Petitioner's detention is instead governed by § 1226(a) and he is entitled to the process so required including, at a minimum, a bond hearing.

B.    Fifth Amendment Due Process Clause

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings, including deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

the question remains what process is due.”).

i.    Liberty Interest

“Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.” *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)).  “Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.” *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear interest in continued freedom protected by the Due Process Clause.  Even if that freedom could be revoked by statute, Petitioner’s liberty is still protected by the Due Process Clause.  *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693.

Petitioner has lived and worked in the United States for at least three years, developing significant ties to his community as evidenced by the letters in support attached to the petition. (ECF No. 1 at 19–24.)  The authors of these letters describe him as “honorable,” “responsible,” and of “good character.”  (*Id.*)  Additionally, they state that his detention has deprived his family of Petitioner’s financial and emotional support.  (*Id.*)  These professional, personal, and familial ties underscore and strengthen Petitioner’s interest in remaining free during the pendency of immigration proceedings.

ii.    Procedures Required

To determine what process is necessary to ensure any deprivation of Petitioner’s protected liberty interest accords with the Constitution, the Court considers three factors: (1) “the private interest that will be affected by the official action;” (2) “the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;” and (3) “the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

5

requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).[3]  As set forth below, these factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private liberty interest that is unquestionably affected by the Government's detention.  The amount of time Petitioner spent at liberty underscores the gravity of its loss.  *See Doe*, 787 F. Supp. 3d at 1094.  Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable.  Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes.  *Hernandez*, 872 F.3d 976.  Petitioner has strong community ties in the United States and has never been convicted of a crime.[4]  (*See* ECF No. 1 at 19–42.)  Respondent does not dispute this, nor does Respondent argue he is a danger to the public or a flight risk.  As such, the risk that Petitioner is being detained without proper justification is exceedingly high.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5

---

[3]    Respondent argues that the *Mathews* framework is inapposite to the due process analysis for immigration detention.  (ECF No. 6 at 2, n.1.)  For this proposition Respondent cites *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024) and *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022).  The former is not binding on courts in the Ninth Circuit and the Court declines to adopt the reasoning articulated therein.  The latter does not support Respondent's position.  In *Rodriguez Diaz* the Ninth Circuit considered a due process challenge brought by an immigration habeas petitioner and stated that his "claims fail even under the *Mathews* test, which is presumably more favorable to him than the test the government seeks. Thus, we assume without deciding that *Mathews* applies here." *Rodriguez Diaz*, 53 F.4th at 1207.  Thus, *Rodriguez Diaz* did not hold that the *Mathews* test is inapplicable to immigration detainees like Petitioner.  "[I]t is axiomatic that cases are not authority for propositions that are not considered." *Godinez-Flores v. Grounds*, No. 12-2726 JST (PR), 2014 WL 3362189, at *6 (N.D. Cal. July 7, 2014).

[4]    As noted above, Petitioner does have a criminal history, but none of these charges resulted in a conviction, and none involved an allegation of a violent crime.  (ECF No. 6 at 9.)

6

(E.D. Cal. May 16, 2025).

Third, the government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low. The effort and cost required to provide Petitioner procedural safeguards are minimal. *See Doe*, 787 F. Supp. 3d at 1094. Notice and custody determination hearings are routine processes for Respondent. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Upon consideration of the *Mathews* factors, the Court finds due process requires that Petitioner receive notice and a hearing before a neutral decisionmaker prior to detention. Petitoner received neither. Petitioner's detention thus violates the Fifth Amendment Due Process Clause

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus (ECF No. 1) and DENIES the Motion for Temporary Restraining Order as moot (ECF No. 2).

1.      Respondent must IMMEDIATELY RELEASE Petitioner Diego Armando M. G. A# 232-418-079 from custody. At the time of release, Respondent must return all of Petitioner's documents and possessions. **Respondent must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

2.      Respondent is ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondent demonstrates by clear and convincing evidence that the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

**3.      The Clerk of Court is directed to serve Central Valley Annex Detention Facility with a copy of this Order.**

4.    The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: July 1, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE